SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**LEWIS S. BURKHART, OSB #082781**
Assistant United States Attorney
Lewis.Burkhart@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:25-cr-00015-AN-02** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **OSCAR ARTEAGA CALIX,** | |
| **Defendant.** | |

**Introduction**

The defendant worked as a courier for a dispatch style drug trafficking organization (DTO) operating from Mexico. The defendant was connected to five separate incidents where the DEA seized drugs dealt by the defendant or drugs possessed to be sold by the defendant. For the defendant's role as a courier, the government recommends a sentence of 21 months imprisonment followed by 5 years of supervised release.[1]

---

[1] The plea agreement did not include a courier reduction under USSG § 2D1.1(e)(2)(B)(i), which the government believes applies due to the facts relating to this particular defendant. The courier reduction reduced the government recommendation from 30 months imprisonment to 21 months imprisonment.

**Government's Sentencing Memorandum**                                                    **Page 1**

**Factual Background**

**A.     The Offense Conduct**

The DEA began investigating a DTO operating a dispatch style poly drug trafficking conspiracy from Mexico.  During the investigation, the DEA learned this DTO sold large amounts of drugs to customers from the Oregon Coast that would come to the Portland, Oregon, to purchase distribution amounts.  As part of the investigation, the DEA obtained court authorized wiretaps on the dispatcher's phone line, who is believed to be operating from Mexico.

The defendant was identified by the DEA as one of the DTO's couriers that would deliver drugs and take payments.  (PSR ¶ 27).  The DEA first identified the defendant as a courier for the DTO in August 2024 when the defendant delivered 2,700 fentanyl pills to a confidential informant.

On November 25, 2024, Judge Simon approved the DEA's request for a wiretap on the Mexican dispatcher's phone.  On December 4, 2024, agents intercepted communications of a customer ordering fentanyl pills.  (PSR ¶ 28).  DEA agents set up surveillance at the deal location and saw the defendant and a codefendant in a vehicle.  *Id.*  The codefendant got out of the defendants vehicle and entered into Matthew Moultrie's vehicle.  *Id.*  The codefendant was in Moultrie's vehicle for a short time before returning to the vehicle with the defendant.  *Id.* Investigators stopped Moultrie and seized 27 grams of fentanyl pills, 208 grams of fentanyl powder, and 66 grams of methamphetamine.  (PSR ¶ 29).

Other agents stopped the vehicle defendant and the codefendant were in.  (PSR ¶ 30). Agents seized 668 grams of fentanyl powder, 949 grams of fentanyl pills, 360 grams of heroin, 136 grams of methamphetamine and $9,032 in U.S. currency.  *Id.*  See photos below of the seizures.

**Government's Sentencing Memorandum**                                      **Page 2**

  

Fentanyl Pills                Fentanyl Powder                Heroin

Despite the interdiction, the defendant continued to work as a courier for the DTO.  On

December 12, 2024, a confidential informant ordered 2,000 fentanyl pills from the dispatcher

and the defendant delivered the pills.

On December 17, 2024, DEA agents executed a federal search warrant at the defendant's

residence.  Agents seized 1,680 grams of fentanyl pills, 490 grams of fentanyl powder, 46 grams

of heroin and $9,090 in U.S. currency.  (PSR ¶ 31).  The defendant was arrested.  *Id.*  Photos of

the seizures are below.

  

Fentanyl Pills                Fentanyl Powder                Heroin

**Government's Sentencing Memorandum**                                    **Page 3**

**B.      The Charges and Plea Agreement**

On February 19, 2026, Defendant pled guilty to Count 1 of the 14-count Superseding Indictment which charges Conspiracy to Distribute Controlled Substances in violation of Title 21, United States Code, Sections 841(a)(l), (b)(l)(A), and 846. (PSR ¶ 1).

**C.      Guideline Computations**

Defendant agreed to plead guilty to Count 1 and in exchange, the government will dismiss the remaining eight counts at sentencing.  (PSR ¶ 14).  The parties agreed that the defendant's relevant conduct pursuant to USSG § 2D1.1 is a base offense level of 34, prior to adjustments.  (PSR ¶ 15).  However, the plea failed to take into account the November 1, 2025, USSG amendment that involves a role reduction for drug couriers.  The government believes the courier reduction should apply.  Therefore, the base offense level is reduced to Level 30.  USSG § 2D1.1(a)(5).  Further, the defendant should receive a 4-level reduction for a minimal role instead of a 2-level reduction for a minor role under USSG § 3B1.2(a).

As part of the plea agreement, the government agreed to recommend the low end of the applicable guideline range as long as the defendant demonstrates an acceptance of responsibility. (PSR ¶ 17).  Because the defendant meets the criteria of 18 U.S.C. § 3553(f) and USSG § 5C1.2 for safety valve relief from a mandatory minimum sentence, the parties will recommend a two-level reduction in the offense level pursuant to USSG § 2D1.1(b)(18). (PSR ¶ 18).  The defendant does not have any criminal history points and meets all of the criteria for the "Adjustment for Certain Zero-Point Offenders" pursuant to USSG § 4C1.1, and the parties will recommend a two-level downward adjustment.  (PSR ¶¶ 19, 45).  Finally, the government will recommend a two-level reduction under 18 U.S.C. § 3553(a) for the defendant resolving the case

relatively quickly without any litigation and based on mitigation provided by the defendant. (PSR ¶ 20).

| Count 1: 21 U.S.C. § 846(a)(1) – Drug Conspiracy | | |
|---|---|---|
| USSG § 2D1.1 | Base Offense Level | 30 |
| USSG § 3E1.1 (a), (b) | Acceptance of Responsibility | -3 |
| USSG § 2D1.1(b)(18) | Safety Valve | -2 |
| USSG § 4C1.1(a), (b) | Zero-Point Offender | -2 |
| USSG § 3B1.2(a) | Minimal Role | -4 |
| 18 U.S.C. § 3553(a) | | -2 |
| | **Adjusted Offense Level** | 17 |

### D.  Government's Recommended Sentence

The defendant operated as a drug courier for a large-scale DTO operating from Mexico that flooded the area with fentanyl, methamphetamine and heroin.  Unfortunately, the defendant's situation is all too common set of circumstances seen in Portland.  He is a Honduran citizen that came to the United States unlawfully seeking to make a living in the United States. The defendant's situation caused him to fall into working as a drug courier and selling the products that poison an untold number of Oregonians.  This DTO's influence likely had a dipropionate effect on the small communities on the Oregon Coast due to a large number of retail distributors coming from the Oregon Coast to Portland to buy drugs from this DTO.

While the government agrees that he is only a courier that did not have any decision-making power, he also did not stop working as a courier after the DEA seized drugs from him on December 4, 2026.  The defendant is not a drug addict that could not quit because of his addiction, but rather someone driven by greed and willingness to keep selling drugs knowing the risk.  A prison sentence is warranted.

The advisory guideline range is 21 to 27 months, factoring in the recommended departures.  While not bound by the Sentencing Guidelines, district courts must consult the

guidelines and take them into account when sentencing. *United States v. Booker,* 543 U.S. 220, 125 S. Ct. 738, 767 (2005). The sentencing guidelines are advisory and one of the statutory factors this Court must consider when imposing a sentence. *See* 18 U.S.C. § 3553(a)(4); *United States v. Rita*, 551 U.S. 338, 347-48 (2007). The guideline serves as "the starting point and the initial benchmark" in every sentencing proceeding and "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Gall v. United States*, 552 U.S. 38, 49 (2007); *Rita*, 551 U.S. at 350. The guidelines serve as a "lodestone" at sentencing, and "cabin" or "anchor" a sentencing court's discretion. *Peugh v. United States*, 569 U.S. 530, 531 (2013). While advisory, the Supreme Court has observed that, "[c]ommon sense indicates that in general, this system will steer district courts to more within-guidelines sentences." *Id*.

Under the facts of this case, 21-month sentence, coupled with a five-year term of supervised release, and a $100 special assessment, satisfies the requirement of 18 U.S.C. § 3553(a) as a "sentence sufficient, but not greater than necessary" to meet the purposes of § 3553(a)(2).

### E.  Conclusion

Based on the foregoing, the government recommends 21-month sentence, coupled with a five-year term of supervised release.

Dated: May 20, 2026                          Respectfully submitted,

                                             SCOTT E. BRADFORD
                                             United States Attorney

                                             */s/Lewis S. Burkhart*
                                             LEWIS S. BURKHART, OSB #082781
                                             Assistant United States Attorney

**Government's Sentencing Memorandum**                          **Page 6**